Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel. You can proceed. May it please the Court, this is Fran Pratt for Melvin Rumph, the appellant. Your Honors, this case turns on the scope of Johnson. In our view, the new right or rule announced in Johnson is not limited to only the ACCA's residual clause. Rather, as later cases make clear, the right applies to other residual clauses that have the same characteristics that made the ACCA clause void for vagueness. Based on this understanding of Johnson, Mr. Rumph timely filed his 2255 motion asserting the Johnson right. I'd like to start with the requirements of this particular provision of the statute of limitations at issue here, and that is in 2255F3. The analysis under three to four questions. I'm using a four-question analysis, although there is overlap. First, what is the right being asserted? Second, when was that right initially recognized? Third, was the right newly recognized? And fourth, has the right been made retroactively applicable? This case turns on the answer to the first question. What is the right being asserted? Or put another way, what is the scope of the right? Once that question is answered, the answers to the remaining questions fall into place. In our view, the scope of the right or the rule set by Johnson is this. If a residual clause subject to the categorical approach analysis contains both of the characteristics of the ACCA residual clause and fixes a mandatory recidivist penalty, then it is unconstitutionally vague. So basically, a residual clause that is within the scope of Johnson has three requirements. The clause must require application of a categorical approach to a judicially determined ordinary case. The clause must require application of an ill-defined threshold of risk to that ordinary case. And the application of that clause must fix a mandatory recidivist penalty. We know that the mandatory career offender residual clause at issue in this case meets all three of those requirements for two reasons. First, courts, including this court, have recognized the nearly identical language of the two provisions and have interpreted them interchangeably, including applying the same categorical approach analysis. And second, the mandatory guidelines fixed the permissible range of sentences and were as binding on courts as the ACCA's residual clause. So in short, because the career offender residual clause requires both an ordinary case analysis and an ill-defined risk threshold, and it resulted in a mandatory recidivist sentencing range, it has the same two features that the Supreme Court ruled in Johnson, well, in Johnson and then later cases, made the residual clauses in sections 924E, 16, and 924C all void for vagueness. Mr. Pratt, this is Jeff Diaz. I have a question. The argument you're making appears to be one that's being made in a vacuum because, and perhaps you're going to get to this eventually, but we're not operating in a vacuum. What you have just said may be compelling to some, but the reality is that we have, that this court has decided an issue, this issue, the scope of what a rule or right means, and Brown. And as I understand your argument in your brief is that subsequent Supreme Court cases have called Brown into question. Of course, neither of those cases, the Naya and Davis dealt with Brown directly, addressed Brown or otherwise called Brown into question in my mind. And since Brown, and perhaps before Brown and after Brown, the Supreme Court has had before it about 30 some odd petitions asking, pleading, begging for it to take a case involving the mandatory guidelines and to in fact apply Johnson to those, to the residual clause in the guidelines and the court has refused at every turn. So I, you know, I'm not, it's not that I'm not empathetic to your client's point of view, but it seems to me that the Supreme Court has at least intimated that perhaps Brown is not at all incorrect and we will simply have to wait until the day, if it ever comes, that the Supreme Court takes on the issue that you just so eloquently talked about. Judge Diaz, as I understand your question, I see two parts to it. Let me take the second part first, which is the Supreme Court's denial of certiorari. That is of no legal significance. The Supreme Court has made clear time and time again that the denial of cert carries no legal significance. That may be in the abstract, but I think when the court has refused 30 some odd times to take a case in the face of arguments made by one or more of the justices, Justice Sotomayor and others, and arguments made by counsel with every bit as open and articulate as you are, and simply refused the case, I don't think we can completely ignore that. So you can, you can continue. Well, with regard to that point, Your Honor, I would point to the example of Paris versus United States, and then after dozens and dozens, if not hundreds of cert petitions were filed trying to challenge Paris, the Supreme Court, 10 years later, did grant certiorari in Alain versus United States. Well, but that's exactly my point, right? The Supreme Court took the case and decided it, and you're asking us to jettison Brown, and simply ignore that precedent. And I don't think we as a panel, even if we thought Brown was wrongly decided, can take on that monster. I think we'd have to wait for the court to go on bond to the Supreme Court to decide this case. Well, so let me turn to the first part of your concern, which is the status of Brown. In our view, Brown is not binding on this court. And the government says that Brown really has two holdings. Neither of those is binding, although for different reasons. In terms of- Do you agree, excuse me, counsel, do you agree that Brown has two holdings? I'm not sure that I do. But I will assume for purposes of this argument, that it does. Well, if it does have two holdings, excuse me, if it does have two holdings, then even if we should agree with you that Brown has been eroded by these later Supreme Court cases, what do we do about the second holding? Judge Motz, this court has said in United States v. Norman, that an untested assumption or an unchallenged assumption is not binding on a future panel. And that's what we have here. With respect to the Brown panel's analytical framework for deciding the question of whether Johnson applies to the mandatory guidelines, the parties never briefed that issue. It simply was never challenged. And then for all the reasons you are, excuse me, that's quite right. They didn't brief it. But it's there in the opinion. And it looks for all the world, like if you look at the first couple of lines of the opinion, that it is a second holding. And sometimes we do discuss arguments that counsel has not made. And they turn out to be holdings. So I'm not sure that solves your problem with this second holding. Well, as we've argued in our reply brief in particular, the analytical framework that the court employed in with Supreme Court analysis. I mean, that might be right, too. But that that certainly is something if it is a holding that we this court, this panel could not conclude, right? I think that court could correct that. I, Your Honor, I think under the rationale of Norman, I think that this court, this panel could assume that it is not bound by Brown with respect to that part of the holding because it's not what the Supreme Court says is the correct analysis. You know, maybe you can spin that out. Maybe show me the parallel that you're drawing to the other. Well, the assumption that a new right is recognized only when the Supreme Court specifically holds was based on the Brown's misunderstanding of the applicable case law. I've been unclear, counsel. I understand that argument. What I'm not sure I understand is your reliance on another one of our cases to say that we can assume that this is not a whole. I understand why you think that second holding is wrong. What I don't understand is how you what your argument is that we can ignore it or reverse it by a panel. So if you could spin that out for me a little bit. Well, because it was unchallenged and untested is why. So what case do you rely on for that proposition? It's Norman, United States v. Norman, which we cited in our reply brief at page 13. And what does Norman involve? There are a couple of Norman cases floating around. Okay, this Norman or the portion of this Norman case had to do, if I'm recalling correctly, with whether conspiracy to distribute drugs qualifies as a career offender predicate. And so this is my case. Is that the one you're talking about? I was just curious. It is. It is. Okay. Okay. All right. I know the case now. Thank you. Okay. So that is why we believe that the first part of Brown concerning the analytical framework is incorrect. And then the second part of Brown, which is that Johnson announced only a very narrow rule that's applicable only to the Armed Career Criminals Act residual clause. And that is, I think that's pretty blatantly incorrect because here we have exactly the same language interpreted in exactly the same way in a set of guidelines that at the time of Mr. Rump's sentencing were very much mandatory in just the same way that the statutes were mandatory. And the Supreme Court has recognized again and again that the mandatory guidelines were binding. And then this court has also recognized quite recently that the mandatory guidelines essentially have the effect of law. And that's in Lester v. Flournoy. Counsel, can I ask you one other question? What happens to the other individuals sentenced under the pre-Booker guidelines who haven't yet filed 2255 petitions, if you prevail here? They're out of luck because they did not file within one year of Johnson. Now, as a practical matter, I think that anybody who was potentially affected by Johnson, who was subject to a mandatory guideline sentence based on a career offender's residual clause, I think they did file. Well, I know you say that in your brief. You say the vast majority of defendants have already filed. Do you have anything that suggests that? Is there any evidence for that proposition? Well, I hope this answers your question. I can tell you that the Fourth Circuit is holding about 40 cases out of the Western District of North Carolina for this case. And then the District of Maryland has at least 25 cases still being held before that court for the resolution of this case. And that's exactly why it's important to this court to go ahead. I don't understand where that goes exactly. Because are those people going to be timely? Is that what you're saying? I just don't understand what you're what you said to me. Well, they sorry, those those cases were all filed within a year of Johnson. And they were what that tells me is there are a lot of cases, but I don't know that that tells me there are a lot of cases that haven't been filed. But fair enough, I, I can, I think the best I can answer is that in my office's experience and that of the offices in the other districts within the circuit, to our knowledge, every, every person, every defendant who was still incarcerated at the time that Johnson came out has filed. And we have not received new requests to file 2255 based on Johnson. Can I follow up? I'm sorry. No, go ahead. I just wanted to follow up on this question, because I think the government made this argument. And it's pretty, you said in the initial response to this question is, well, they're out of luck. That doesn't seem to be a very satisfying answer in terms of trying to develop a legal rule. You seem to be suggesting that litigants need to be fortune tellers, essentially being able to predict and spin out the potential effects and expansions of a legal rule on pain of suffering a default or waiver if they don't guess correctly. And that doesn't seem to be a very satisfying rule, whereas simply sticking strictly to the logic and narrow interpretation of a rule that says it applies in this context, in the actual context, it doesn't apply anywhere else, at least gives some predictability to litigants that they'll just need to wait until the Supreme Court actually decides the issue. Now, that itself may not be entirely satisfying, but it is a lot more predictable. Your Honor, I'm not sure that that is, because particularly in a situation like this, where the clause at issue is so on all fours with the clause at issue in Johnson, and that the point of the statute of limitations, when Congress enacted it, was to encourage diligence. And that's, it was Congress's choice to draft the statute of limitations in S.3 the way that it did. And if the result of that is that it means that the defendants need to file, perhaps prematurely, then that was Congress's choice, and the defendants who have filed in the mandatory guidelines context were doing so on the basis of the wording of S.3. So I think, you know, they were between a rock and a hard choice, in a sense, if they didn't file, then they could be out, then they could end up being too late, potentially, or their sentences could end up having expired. So, you know, this may be, in the end, this is a problem that Congress needs to address, but I think the courts have to accept that choice of Congress in its work. Congress also, in drafting the PEPA regime and statutory rules and the like, was also concerned about, well, rightly or wrongly, wanted to circumscribe the ability of petitioners who have their day in court and then some to continue to seek relief post-conviction. Now, obviously, that, you can argue about the policy benefits or detriments to that, but there's also that to consider, and it seems to me that imposing a rule that requires litigants to wait until the Supreme Court has actually announced a rule of applicability for the particular question or issue seems consistent with that policy objective. I understand the court's concern. I mean, for example, if a defendant tried to raise a Johnson claim in, say, a Fourth Amendment case, that is so clearly outside the statute of limitations, or has nothing to do with the subject matter of Johnson, that that's a very easy case to disclose of. But this, I mean, the statute of limitations is a threshold question, and here we have made a very colorable, plausible claim that Mr. Rumpf has asserted a right that is on all fours with the right announced in Johnson, and so for purposes of the statute of limitations, which, by the way, is an affirmative defense that the government can raise, he has made that claim. And very squarely within the realm of, I think, what the statute of limitations envisions, and very squarely within the realm of Johnson itself. As I remember, has your time expired? I did it go off? I'm so sorry. I missed that, but yes, it is my time. That's all right. I want to be sure. Judge Cogburn, if you have any questions, please, please feel free to jump right in. Okay, thank you very much. I don't have any on this. Thank you. Okay. Judge Diaz, do you have further questions? No, thank you, Judge Mott. Thank you, Ms. Strunk. Okay, you probably reserved some time for rebuttal, did you? I did, Your Honor, yes. Okay, well, we can hear from you again. Okay, thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court. Daniel Young on behalf of the United States. The government's fundamental submission in this case is that Brown's two holdings were correct in 2017, and they're correct today. Brown was correct in holding that the Supreme Court has not newly recognized a right if the underlying question remains open, and it was correct in concluding that Johnson announced a right narrowly applicable only to the Armed Career Criminal Act. Well, Counsel, do you have to win on both of those arguments to have us affirm? I don't think so, Your Honor. I think the Court could, in theory, say that DiMaia and Davis have called into question Brown's treatment of Johnson, and because we think everything in Part 2A of Brown about what the word recognize means remains binding, we would still prevail. And what if we think that the rationale in 2A is incorrect? Then I – if the Court genuinely thinks that it is writing on a blank slate – No, no, that's not what I asked you. I asked you if we think that the rationale set forth in 2A is wrong. Not that we're writing on a blank slate, but there it is, and it's wrong. I appreciate that, Your Honor. And then I think it goes back to the colloquy Your Honor had with Ms. Pratt, which is I think the Court would have to go en banc under the prior panel rule. In the absence of any Supreme Court case that has addressed the meaning of the text of 2255F3, I think 2A remains binding. But, of course, Your Honor brought up the point about whether DiMaia and Davis had called into question Brown's interpretation of the Johnson right. I think it would be helpful to talk about that for a few moments. We don't think either opinion does. I think the Ninth Circuit and the Tenth Circuit are very helpful on this. You know, Brown, we think correctly, incorporated Chaidez into its analysis. So a right is only new if it hasn't been dictated by prior Supreme Court precedent, and it's not so dictated unless all reasonable jurists would agree. But as the Ninth Circuit held in Blackstone after DiMaia, every time one of these residual clauses arises in a new context, there are, in fact, reasonable judges who disagree, including at the Supreme Court. And Pullen, the Tenth Circuit case decided after DiMaia, at 6, made what I thought was a very insightful point, which is, you know, so far the Supreme Court has been addressing these residual clauses on direct appeal. And, of course, Brown itself recognizes that all courts have the inferior license, that's the quote from Brown, to extend precedent on direct appeal. But as the Tenth Circuit said in Pullen, if the Supreme Court had wanted to signal that it's Johnson itself that decided this, for purposes of collateral review, the key word is dictated. I mean, either DiMaia or Davis could have said, the result here is dictated by Johnson and no reasonable jurist could disagree. But, of course, it didn't say that. And so we're left with the exact same doctrinal landscape that this court confronted in Brown, which is, we have three statutes where, taking one at a time in each context seriatim, the Supreme Court has held individually that those residual clauses are void for vagueness. And we have Beckler. Yes, but counsel, I'm sorry to interrupt you. It's hard not to in this manner, in the way we're hearing this case. Anyway, but the circuits prior, I'll just take the last case, prior to the Supreme Court's issuance of it, the circuits, including this one on Bank, held it was void for vagueness under the other statutes, under the Supreme Court cases that preceded it. So I'm not really sure that that argument is so helpful to you. Let me address that directly. I have a question. I think you're referring to the residual clause in the advisory guidelines, right, Judge Moss? No, no, no, no, no. I'm talking about the DeMaia, Sam, Davis, all of those cases. And what we did was say we didn't wait for the Supreme Court to make a resolution of the particular statute that was in front of us, the on-bank court. We relied on Supreme Court precedents dealing with other similar statutes, right? Of course, Your Honor, but Brown recognized that was totally permissible. The inferential license phrase is a quote from Brown. So the government's view of the doctrine is that for all cases on direct appeal, post-SIMS, the residual clause was void for vagueness in 924C3B, but SIMS did not reopen the 2255F3 gateway. Davis was necessary for that. And so if you were a petitioner on collateral reviews seeking to make a claim that 924C3B was void for vagueness, that gateway was closed until Davis was decided, irrespective of SIMS. And six circuits since DeMaia, the 2nd, 3rd, 5th, 6th, 8th, 9th, and 10th, have all looked at this exact same issue with the additional benefit of the DeMaia precedent and said that this court's Brown decision was correct. And that leads to a point that Judge Diaz made a moment ago in conversation with my friend on the other side. Of course, the government agrees that a dissent from the denial of certiorari or the denial of certiorari itself is not binding. But the reality is that in 2255F3, Congress turns the Supreme Court into the Sistine Chapel, and we're all waiting for the white smoke. And Judge Diaz, you said 30-some, which is the number we quoted in our brief. After the government filed its 28J letter, I went back and retallied. I count 55 denials of certiorari on this exact same issue. And if my friend on the other side is correct, all of those 55 cases involve a flagrant violation of the holding of Johnson, and yet the Supreme Court has not acted. And we think that's because Justices Ginsburg and Sotomayor are absolutely correct when they say the question is open. And if the question is open. Counsel, can I ask you, are you familiar with the cases that interpreted Euston Carey? Bailey and the like, Your Honor? Yes, the pre-Bailey cases. Every circuit, every circuit had gone the other way. And the Supreme Court let all of those cases sit there and finally decided Bailey. Well, maybe I'm missing. I don't know that the DC Circuit had a case, but nine circuits went the other way. Well, Your Honor, of course. My reaction to that is exactly. Go ahead. You go ahead. Oh, I was just going to say, Your Honor, I fully take the point. I think it's an incisive one. But I think my reaction to that is the same as, for example, the Second Circuit in the recent Nunez case. If the Supreme Court were to do that, then the 2255F3 gateway would be open for a year. And the consequence of adopting my friend's rule is that it is slammed shut forever, even if the Supreme Court does exactly what Your Honor suggests. And we think that's a very compelling reason to conclude that the Brown rule is the better rule from a matter of jurisprudence. The Supreme Court's again and again, I mean, Nunez cited Lopez against Smith from 2014, where the Supreme Court said, when you are interpreting our precedents under AEDPA, do not interpret them at too high a level of generality. It causes trouble. And we just think it's untenable to believe that if the Supreme Court were to do exactly what Your Honor suggested and, you know, pull kind of a Bailey and a year or two years from now decide to grant cert on this issue and declare that this residual clause is unconstitutional, we think the doctrinal consequence of that ought to be that the 2255F3 gateway opens wide for all litigants who want to walk through it. So we can quote you on that when you're back to us in five years or so? Absolutely, Your Honor. Well, no, but I really take the point. I mean, there have been any number of 924C cases that have been held in the district court, for example. And after Davis, the government's position is that the 2255F3 gateway is wide open. And there is no timeliness problem with those petitions. I do want to address how my friend on the other side opened her argument, which is by saying that the key question in this case is the scope of the right being asserted. That's a fundamental difference between the government and the defendant here. And respectfully, I think that's the same mistake of textual interpretation that the Seventh Circuit made in Cross and it has been rejected by seven other circuits. Under the text of 2255F3, the one-year deadline runs from the date on which the right asserted was initially recognized. The recognition of the right is kind of a conditioned precedent. And I think what my friend is doing and what Cross is doing is interpreting that text as though it said that the one-year period runs from the date on which the defendant asserts that a right has been recognized. And that's simply not what it says. We think the Third Circuit got this exactly right in green. That collapses 2255F3 into a pleading rule devoid of any substantive connection to the reality of Supreme Court doctrine, and we think that's incorrect. Mr. Young, can I ask you a question about the word initially? Because I think your colleague on the other side had pointed to a case, which is escaping me now, that suggests that initially connotes that this is not just a one-time deal in terms of recognizing the right, but is intended to signal that the particular right might have meaning beyond the initial facts and procedural posture of the case before the court. What do you say in response to that? I say, Your Honor, that we think Brown understood the scope of the doctrinal landscape exactly right. The 2255F3 gateway is open for the ACCA. It is open for 16B, and it is open for 924C, because each of those cases, one at a time, grappled with this issue directly. It is not the case that Johnson opened the gate for all residual clauses everywhere. One, we know that from Beckles. I mean, once Beckles has decided there is this enormous doctrinal question in this jurisprudence, which is okay. The Supreme Court seems to be saying that for statutes, these clauses are invalid, but for the advisory guidelines, they are not. Are the mandatory guidelines more like the advisory guidelines or more like statutes? And neither DeMaio or Davis did anything to move the needle on that open question. And we think Brown got that exactly right. So we just think the Supreme Court has chosen to do these one at a time. And of course, the questions continue to arise. We cite in our brief the Second Circuit's opinion in Watkins, where it addressed one of these clauses lurking in the Bail Reform Act, and concluded that the rules of Johnson did not apply to invalidate that clause, which is consistent with the lesson flowing from the juxtaposition of Johnson and Beckles, which is that each one of these has to be handled on its own terms. I'd also like to point out 2255F3 also uses the word retroactive. The right has to be recognized, and it has to be retroactive. And I think it is very helpful to line up Welch, which is the Supreme Court's Johnson retroactivity decision, with Booker and Morris. Morris is this court's decision saying that Booker was not retroactive. And the reason for that is that, of course, Welch's main doctrinal hook for saying that the Johnson right was retroactive is that a statutory mandatory sentence under the ACCA altered the range of conduct or the class of persons that the law punishes. That's a quote from the Supreme Court's decision in Schreierow. But if the court goes back to its Morris decision from 2005, footnote 6 of that decision says expressly, the reason that Booker is not retroactive is that the mandatory guidelines do not alter the range of conduct or the class of persons that the law punishes, quoting Schreierow. So on the exact point that the Supreme Court used to reach its retroactivity holding in Welch, this court and all the other courts of appeals have gone the other way. And I don't think there's any answer to that in my friend's reply brief. If it is the case that mandatory guidelines taken as a whole do not alter the nature of conduct punished, then our submission is that one clause in one guideline does not either. There are also open questions about whether the reasoning of Beckles really supports the defendant's position here, supports the government. We think it supports the government. Justice Thomas, writing for the court, said that there are two underlying concerns for vagueness doctrine, notice and arbitrary enforcement. We think the notice point helps us. A case that is not cited in our brief but that I've provided to the other side is this court's 1991 opinion in Defusco, which was a Rule 11 case because the question arose under the mandatory guidelines. Rule 11 says that in a plea colloquy, the court has to provide the defendant notice of mandatory penalties. Does that mean the defendant needs to receive a mandatory guidelines-rich calculation? And this court said no, because under the mandatory guidelines, the maximum sentence will never exceed the maximum provided by statute. That's at 949F2nd, page 119. I'm going to jump in here. So at this point, it seems like you're, and I understand why you're doing it, but you're sort of straining into the merits,  and your colleague says that Brown just forecloses all that discussion entirely in court. Judge Howell, for example, in the district court in D.C., said that's not correct. We at least get to consider the merits, and she ultimately denied relief. But you don't want it to go that far, right? I absolutely do not, Your Honor, and the reason that I was discussing Welkin-Beckles is not to go to the merits but to go to whether or not there's an open question. There's some harmonic resonance between those two queries, I grant you, but they're different. And my point is simply, you know, I'll go to where I began, Your Honor, which is the defendant's position here is that one should be able to read Johnson and no reasonable jurist should be able to disagree that the residual clause in the mandatory guidelines is going for vagueness. And my only point is that if one lines up the various lines of precedent that bear on this question, reasonable jurists absolutely can disagree. And under Part 2A of Brown, that means the Supreme Court has not recognized the right of issue. I take the point about conflating timeliness and the merits. That was the Seventh Circuit's point across. I think that's wrong, you know, even if there are all kinds of merits questions that are not addressed at all by the open question inquiry, right? So, for example, we make the argument in our brief that this clause isn't vague as applied, that the grant of First Step Act relief has rendered this error, if there is an error, harmless. You know, the defendant could win on timeliness in theory and still lose on the merits. I mean, they're separate questions. And my point, Your Honor, is not to jump the gun and go to the merits. It's simply to underscore the extent to which doctrine leaves this question unanswered. And under Brown, absent an en banc sitting at this court, as Judge Motz and I discussed, we think that's the end of the inquiry. Does anyone have any further questions of counsel here? I do not. All right. I think we understand your position, Mr. Young. Thank you very much, Your Honor. Thank you. Do we have any rebuttal? Ms. Brown? I'm sorry. She's just been unmuted. Thank you, Judge Motz. Yes, I do have some rebuttal. I have five points. I will try to make them quick. First, as to what the government has said about too high a level of generality. In this case, that is not an issue. All the courts have recognized that the mandatory guidelines, residual clause, and the actual residual clause use exactly the same language and exactly the same analysis. Secondly, as to what the government has said about initially recognize, and its point that what we are arguing would mean one year from asserting the right, no. That is not correct. Third, in terms of the retroactivity, there is a big distinction between Welch and Booker. Booker, as the government said, was talking about the guidelines generally. But the reason that Booker was not retroactive was because it dealt with a procedural rule. Who is the fact finder for finding the facts that increase a sentencing range? Here, the career offender guideline very clearly defines a class of persons, just like the actual residual clause. Welch has said that the actual residual clause is retroactive because it is substantive. And that is exactly the same thing here. As to DeFosco, Mr. Young was very kind enough to let me know that he would be raising it. And the issue about whether the guidelines were mandatory or not has expressly been decided and rejected in Lester. As well, at the time of a plea colloquy, even at the time of that case, a defendant was required to be advised about the guideline range, even if it wasn't specifically determined. So I think with those points, I will conclude. And we ask this court to find, like the Seventh Circuit and Cross, that Mr. Rumpf timely filed his 2255 motion. And we ask the court to vacate the contrary ruling of the district court. Thank you. Counsel, we very much appreciate your arguments. You both did really an excellent job and wrote fine briefs. And I'm sorry we don't have the opportunity to come down and shake your hands. But I think this went about as well as it could go, all things considered. Thank you very much. So I guess our clerk will now adjourn court. Is that right? I'm going to take a brief break before we start the next oral argument. Okay. The court will take a brief break before hearing the next case.
judges: Diana Gribbon Motz, Albert Diaz, Max O. Cogburn Jr.